Eastern District of Kentucky
FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

AUG 09 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-504-GWU

PEGGY L. CONWELL,                                              PLAINTIFF,

VS.                    **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                              DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled. If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)? If yes, proceed to Step 3. If no, the
      claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities? If yes, proceed to
      Step 4. If no, the claimant is not disabled. See 20 C.F.R.
      404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.    See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?   If yes, the claimant was not disabled.    If no, proceed to Step 7.    See 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled.    See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Conwell

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged

3

Conwell

> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment. The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987). Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services,

816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242

(6th Cir. 1990).

4

Conwell

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

Conwell

physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Peggy L. Conwell, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of insulin-dependent diabetes mellitus with a history of diabetic ulcers and possible peripheral neuropathy, hypertension controlled with medication, morbid obesity, osteoarthritis of the right hip, and limited academic ability based on Wide Range Achievement Test-III (WRAT-III) scores indicating fourth-grade reading and arithmetic and second-grade spelling abilities. (Tr. 20-1). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Conwell retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 23-6). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age and work experience could perform any jobs if she were capable of "medium" level exertion, could sit for six to eight hours in an eight-hour day (no more than two hours continuously) and stand and walk 4 to 5 hours in an eight-hour day (no more than 30 to 45 minutes continuously), and also had the following non-exertional impairments. (Tr. 316). She: (1) could "frequently" bend, squat, and reach above shoulder level; (2) could occasionally crawl and climb; (3) had a fourth-

7

grade reading and arithmetic ability and a second-grade spelling ability; and (4) was limited to the performance of simple, repetitive, 1-2 step tasks and instructions in routine work settings. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 316-17).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff does not challenge the VE's physical findings, which are based on the conclusions of a consultative examiner, Dr. Martin Fritzhand, which are not contradicted by any other medical source. (Tr. 268). The plaintiff's sole argument is that she meets the Commissioner's Listing of Impairment (LOI) 12.05C, captioned "Mental Retardation."

The only mental status evaluation in the transcript was conducted by Edward C. Lovelace, M.S., a "psychological associate," apparently supervised by Mike Rinderle, Psy.D., a licensed clinical psychologist. (Tr. 264). Mr. Lovelace noted that the plaintiff had completed 12 grades, but was socially promoted several times, with her educational record showing that she was retained in the first and fourth grades and socially promoted in the six and seventh grades. (Tr. 261-2). She had only one brief period of employment in a garment factory. (Tr. 262). Mr. Lovelace administered IQ testing, which showed a verbal score of 67, a performance score of 70, and a full-scale score of 66, which he felt were valid based upon the plaintiff's

8

Conwell

"sustained effort." (Id.). WRAT-III testing showed fourth-grade reading and arithmetic and second-grade spelling. (Tr. 263). Mr. Lovelace opined that Mrs. Conwell would not be able to function in most job settings. (Id.). He made no diagnosis on Axis I, and diagnosed "intellectually deficient per intellectual assessment" on Axis II. (Id.). He also assigned a Global Assessment of Functioning (GAF) score of 50. A GAF score in this range reflects serious symptoms or any serious impairment in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34.

> LOI 12.05C states, in pertinent part, that:
>
> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied....
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;....

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

In Foster v. Halter, 279 F.3d 348 (6th Cir. 2001), the Sixth Circuit Court of Appeals held that a claimant will meet the Listing only if her impairment "satisfies the diagnostic description and introductory paragraph and any one of the four sets of

9

criteria." Id. at 354 (citing 20 C.F.R. Part 404, Subpt. P, App. 1 Section 12.00(A) (emphasis in original).

The ALJ determined that the evidence did not support Listing level restrictions in the plaintiff's adaptive functioning. (Tr. 21). He noted that there was no IQ or other psychological testing prior to age 22 and, despite her poor grades and social promotions, Mrs. Conwell graduated 99th in a class of 125 students. (Tr. 21, 113). He reasoned that attributing her poor performance to mental retardation would suggest that 21 percent of her class ranked intellectually within the bottom two percent of the nationwide population. (Tr. 21 n. 8). He also noted a number of functional factors apparently not considered by the psychologist. The plaintiff had been employed as a school bus monitor for approximately six months in 1993 and stated in her Disability Report that she stopped the job because she could not "get enough work." (Tr. 84, 292). The plaintiff testified that she had been able to raise a daughter, and could prepare simple meals, perform household chores such as laundry, dishwashing and vacuuming, use household appliances such as a VCR, DVD player and microwave oven, was able to drive, had learned to type, and could administer her own insulin shots and monitor her own blood sugar. (Tr. 21, 288, 290, 295, 297-9, 306-8). The ALJ also felt that her level of daily functioning was inconsistent with a GAF of 50, which he equated to such factors as suicidal ideation, severe obsessional rituals, or frequent shoplifting per the DSM-IV-TR. (Tr. 21).

10

Conwell

While the plaintiff's poor grades in school and the fact that she only graduated from high school shortly before 21st birthday provides some evidence of a limitation in functioning prior to age 22, the standard of review is whether there is "substantial evidence" to support the ALJ's determination. The plaintiff's testimony was consistent with an ability to perform relatively complex tasks, such as administering insulin shots. It also appears that there was no intellectual reason that she was unable to perform a job as a school bus monitor, and that stopping this job was a matter of personal choice. Taken as a whole, substantial evidence exists to support the ALJ's determination that the Listing was not met.

The decision will be affirmed.

This the _____9_____ day of August, 2006.

G. WIX UNTHANK
SENIOR JUDGE

11